

***KAMALA D. HARRIS***
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 322-9041
Facsimile: (916) 324-8835
E-Mail: Anthony.Hakl@doj.ca.gov

March 22, 2016

Molly C. Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94105-1526

RE:     *Italian Colors Restaurant v. Kamala D. Harris,* Case No. 15-15873

Dear Ms. Dwyer:

     Appellants respectfully file this letter under Federal Rule of Appellate Procedure 28(j).

     In an opinion published on March 2, 2016, the Fifth Circuit concluded that Texas' no surcharge statute, which is similar to the California statute at issue in this appeal, does not violate the First Amendment. *See Rowell v. Pettijohn*, No. 15-50168 (5th Cir. Mar. 2, 2015). Specifically, the court held that "Texas' law regulates conduct, not speech, and, therefore, does not implicate the First Amendment. Instead, the law ensures only that merchants do not impose an additional charge above the regular price for customers paying with credit cards." (Op. at 10.) The Fifth Circuit also concluded that "Texas' law is not unconstitutionally vague." (*Id*. at 16.)

     Thus, the Fifth Circuit has now joined the Second Circuit, which in a decision last year concluded that New York's no surcharge statute does not violate either the First Amendment or the Due Process Clause. *See Expressions Hair Design v. Schneiderman*, 808 F.3d 118 (2d Cir.), *amending and superseding* 803 F.3d 94 (2d Cir. 2015). Only the Eleventh Circuit has struck down a no-surcharge law as unconstitutional. *See Dana's R.R. Supply v. Att'y Gen. of Fla.*, 807 F.3d 1235 (11th Cir.), *reh'g denied* (11th Cir. Jan. 13, 2016).

     A copy of the Fifth Circuit's recent opinion is attached to this letter.

                              Sincerely,

                              */s/ Anthony R. Hakl*
                              ANTHONY R. HAKL
                              Deputy Attorney General

                    For     KAMALA D. HARRIS
                              Attorney General

cc: All counsel via electronic filing system

# Fifth Circuit Opinion

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

────────────

No. 15-50168

────────────

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2016

Lyle W. Cayce
Clerk

LYNN ROWELL, doing business as Beaumont Greenery; MICAH P. COOKSEY; MPC DATA AND COMMUNICATIONS, INCORPORATED; MARK HARKEN; NXT PROPERTIES, INCORPORATED; PAULA COOK; MONTGOMERY CHANDLER, INCORPORATED; SHONDA TOWNSLEY; TOWNSLEY DESIGNS, L.L.C.,

       Plaintiffs - Appellants

v.

LESLIE L. PETTIJOHN, in her official capacity as Commissioner of the Office of Consumer Credit Commissioner of the State of Texas,

       Defendant - Appellee

────────────

Appeal from the United States District Court
for the Western District of Texas

────────────

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this challenge to a Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) dismissal, upholding Texas' Anti-Surcharge Law, Tex. Fin. Code § 339.001, at issue is whether the law's proscribing merchants' imposing surcharges for credit-card purchases constitutes a First Amendment violation. In contending the law violates free-speech rights, a group of Texas merchants claim the law: penalizes them for characterizing pricing as a "surcharge", while at the same time not prohibiting a "discount" for non-credit-card

No. 15-50168

transactions; and is unconstitutionally vague.  The Texas Office of Consumer Credit Commissioner counters the law is instead a permissible economic-pricing regulation that does not implicate the First Amendment.  AFFIRMED.

## I.

Texas' law forbids merchants from charging an extra fee to consumers who pay with a credit card.  It was enacted to address how the "swipe fee" of two to three percent of the purchase price, which credit-card issuers charge merchants for each transaction paid with a credit card, is passed on from the merchant to the consumer.

There is a substantial federal-law backdrop to the challenged Texas law. For over a decade prior to its enactment, Congress had been regulating surcharges and discounts related to credit cards.  In 1974, Congress amended the Truth in Lending Act to prohibit credit-card companies from contracting against discounts for non-credit-card transactions.  Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)) ("the card issuer may not, by contract, or otherwise, prohibit any . . . seller from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card").

Before the amendment, credit-card companies' contracts with merchants regularly prohibited their either offering discounts for non-credit-card transactions, or imposing surcharges for credit-card transactions.  The merchants and credit-card companies contracted to offer the same price for an item for all consumers, regardless of the manner in which they paid, and despite the "swipe fee" merchants incurred for credit-card transactions.

Two years later, while the authorization of discounts remained, Congress banned merchants' use of surcharges, by again amending the Truth in Lending Act.  Pub. L. No. 94-222, § 3, 90 Stat. 197 (1976) ("No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit

2

No. 15-50168

card in lieu of payment by cash, check, or similar means."). At the same time, Congress clarified the distinction between "surcharge" and "discount", by defining them according to their ordinary meaning: a "discount" is "a reduction made from the regular price"; a "surcharge", "any means of increasing the regular price to a cardholder which is not imposed upon customers paying by cash, check, or similar means". *Id.* (codified at 15 U.S.C. § 1602(q)–(r)).

When Congress extended the statute in 1981, it defined "regular price" to further distinguish between "surcharge" and "discount":

> [T]he tag or posted price charged for the property or service if a single price is tagged or posted, or the price charged for the property or service when payment is made by use of . . . a credit card if either (1) no price is tagged or posted, or (2) two prices are tagged or posted, one of which is charged when payment is made by use of a . . . credit card and the other when payment is made by use of cash, check, or similar means.

Cash Discount Act, Pub. L. No. 97-25, § 102, 95 Stat. 144 (1981) (codified at 15 U.S.C. § 1602(y)).

The federal ban on surcharges was renewed twice before being allowed to expire in 1984, in the face of continued criticism from consumer advocates and the Federal Reserve Board. *See* Financial Institutions Regulatory & Interest Rate Control Act, Pub. L. No. 95-630, § 1501, 92 Stat. 3641, 3713 (1978); Cash Discount Act, Pub. L. No. 97-25, § 201, 95 Stat. 144 (1981); *Cash Discount Act, 1981: Hearings on S. 414 Before Senate Banking Comm.*, 97th Cong., 1st Sess. 9 (18 Feb. 1981). On the other hand, and of significance here, the authorization for discounts remained. Fair Credit Billing Act, Pub. L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)).

Upon the lapse of the federal anti-surcharge law in 1984, credit-card companies began reviving anti-surcharge clauses in their contracts with

No. 15-50168

merchants. Similarly, States, including Texas, began enacting anti-surcharge legislation. Its 1985 anti-surcharge law provides: "In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment". S.B. 1353, 69th Leg., Reg. Sess., ch. 443, § 1, Tex. Gen. Laws 1578, 1578 (Tex. 1985) (codified at Tex. Fin. Code § 339.001(a)). The law does *not* ban, nor does it mention, discounts. Other States also adopted anti-surcharge legislation. *See, e.g.*, Cal. Civ. Code § 1748.1(a), *held unconstitutional by Italian Colors Rest. v. Harris*, 99 F. Supp. 3d 1199 (E.D. Cal.), *appeal docketed*, No. 15-15873 (9th Cir. 30 Apr. 2015); Colo. Rev. Stat. § 5-2-212; Conn. Gen. Stat. § 42-133ff; Fla. Stat. § 501.0117, *held unconstitutional by Dana's R.R. Supply v. Att'y Gen. of Fla.*, 807 F.3d 1235 (11th Cir.), *reh'g denied* (11th Cir. 13 Jan. 2016); Kan. Stat. Ann. § 16a-2-403; Mass. Gen. Laws ch. 140D, § 28A(a)(1)–(2); Me. Rev. Stat. tit. 9-A, § 8-509; Miss. Code Ann. § 31-7-9(d) (applying only to state-issued credit cards); N.Y. Gen. Bus. Law § 518; Okla. Stat. tit. 14A, § 2-211; Utah Code Ann. § 13-38a-302 (2013), *repealed by* § 63I-1-213 (2014).

Beginning in 2005, antitrust actions against credit-card companies challenged anti-surcharge prohibitions in their merchant contracts; the litigation resulted in Visa, Mastercard, and American Express' removing those provisions in 2013. As a result, state laws were the only proscription against merchants' imposing a surcharge, leading to more litigation, including this action.

This challenge to Texas' law was filed in March 2014. The district court dismissed it for failure to state a claim, and denied a preliminary injunction. *Rowell v. Pettijohn*, No. A-14-CA-190-LY (W.D. Tex. 4 Feb. 2015).

No. 15-50168

## II.

A Rule 12(b)(6) dismissal is reviewed *de novo*. *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir.) *cert. denied*, 136 S. Ct. 534 (mem.) (2015). The dismissal will be affirmed "when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).

The merchants claim the surcharge prohibition "ban[s] one disfavored way of truthfully describing lawful conduct, [and] is a content-based speech restriction". In other words, they maintain the law is not a permissible economic regulation, but instead requires them to convey their prices in a certain way: as "less" than the regular price, rather than "more" when paid with a credit card, although, they contend, mathematically, the result is the same. Additionally, the merchants assert they cannot advertise two prices (dual pricing—a higher price for credit, and a lower price for cash, check, or similar means of payment (cash)) for fear of inadvertently describing the price for credit-card transactions as "higher" than the regular price, and thereby violating Texas' law. Based on that fear, they state their prices are higher for all their customers, regardless of whether they pay by credit card or cash. The merchants concede, however, that dual pricing is legal under Texas' law. They also assert the law is unconstitutionally vague because the distinction between a surcharge and a discount is purely semantic, and difficult to abide by in practice.

In response, the Commissioner contends the law does not restrict how a merchant may convey price to the consumer, but rather is a permissible economic regulation under Texas' police power. She maintains the law

No. 15-50168

prevents merchants from imposing surcharges on consumers who pay with credit cards—nothing more. Any impact on speech as a result of the law, the Commissioner claims, is merely incidental to the ban against credit-card surcharges, and does not implicate the First Amendment. Additionally, the Commissioner asserts the law limits consumer confusion and protects from the potential for windfall profits merchants could collect by imposing surcharges for credit-card transactions that are *higher* than the concomitant credit-card "swipe fees".

### A.

Before addressing Texas' law, it is helpful to consider the circuit split resulting from our sister circuits' recently ruling on state anti-surcharge bans.

### 1.

The second circuit upheld New York's anti-surcharge law, reversing the district court. *Expressions Hair Design v. Schneiderman*, 808 F.3d 118 (2d Cir.), *amending and superseding* 803 F.3d 94 (2d Cir. 2015). Conversely, the eleventh circuit held Florida's anti-surcharge law violated merchants' First Amendment free-speech rights. *Dana's R.R. Supply*, 807 F.3d at 1235.

### a.

The second circuit held New York's law was a legal economic regulation that did not implicate the First Amendment. *Expressions*, 808 F.3d at 122. That law provided in relevant part: "No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means." *Id.* at 124; N.Y. Gen. Bus. Law § 518. In challenging the law, merchants claimed, *inter alia*, it violated the First Amendment's Free Speech Clause. *Expressions*, 808 F.3d at 121–22. They asserted they wanted to assess a single price for their goods and services, and charge an additional "surcharge" to credit-card customers in order to offset

6

No. 15-50168

credit-card companies' "swipe fees", but feared that such a pricing scheme would be prohibited by the anti-surcharge law. *Id.* at 126, 128–29.

The district court, *inter alia*, permanently enjoined enforcement of the law, stating it "burden[ed] speech by drawing the line between prohibited surcharges and permissible discounts based on words and labels, rather than economic realities". *Id.* at 127 (alterations and internal quotation marks omitted). The court additionally determined the law was void for vagueness because it "turn[ed] on the labels that sellers use to describe their prices". *Id.*

In reversing, the second circuit held the law "does not violate the First Amendment as applied to single-sticker-price sellers". *Id.* at 130, 141. The court stated "that prices, although necessarily communicated through language, do not rank as 'speech' within the meaning of the First Amendment". *Id.* at 130. It further clarified: "[The law] does not prohibit sellers from referring to credit-cash price differentials as credit-card surcharges, or from engaging in advocacy related to credit-card surcharges; it simply prohibits imposing credit-card surcharges. . . . [The law] regulates conduct, not speech". *Id.* at 131 (internal quotation marks omitted) (citing *Rumsfeld v. Forum for Acad. & Institutional Rights*, 547 U.S. 47, 60 (2006)).

With regard to the merchants' assertion the law applied to sellers who use pricing schemes outside of "single-sticker" prices, such as "dual-pricing" (again, posting one price for credit-card users, and another for those who use cash), the court abstained from reaching the merits of the issue under *Railroad Commission of Texas v. Pullman Co.*, because doing so implicated an unsettled state-law question: whether the law prohibits pricing schemes other than "single sticker". *Id.* at 135–37 (citing *Pullman*, 312 U.S. 496 (1941)).

The court also reversed the district court's holding the law is unconstitutionally vague, ruling it "has a core meaning that can be reasonably understood: sellers who post single sticker prices for their goods and services

7

No. 15-50168

may not charge credit-card customers an additional amount above the sticker price that is not also charged to cash customers". *Id.* at 142 (internal quotation marks omitted).

b.

By contrast, in *Dana's Railroad Supply,* the eleventh circuit struck down Florida's anti-surcharge law, holding it regulated the content of merchants' speech, in violation of the First Amendment. 807 F.3d at 1239. The Florida law provided, in relevant part: "A seller . . . may not impose a surcharge on the buyer . . . for electing to use a credit card in lieu of payment by cash, check, or similar means . . . . This section does not apply to the offering of a discount for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card". *Id.* at 1242; Fla. Stat. § 501.0117.

In determining the law did not regulate economic conduct, the court ruled it targeted "expression alone", and "there is no real-world difference between [a surcharge and discount]". *Dana's R.R. Supply*, 807 F.3d at 1245. The court held the statute, therefore, restricted the content of merchants' speech: the manner in which they could describe their pricing scheme. *Id.*

The court then assumed, *arguendo*, the law implicated commercial-speech content, and analyzed it under the more lenient *Central Hudson* intermediate-scrutiny standard. *Id.* at 1246, 1249; *Cent. Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980) (describing the four-pronged test for commercial speech). Under that standard, "restrictions directed at commerce or conduct may be upheld—assuming they further a substantial government interest and are narrowly tailored—even if they impose incidental burdens on speech". *Dana's R.R. Supply*, 807 F.3d at 1246 (alterations and internal quotation marks omitted).

In holding the law "founder[ed] at every step" of the commercial-speech analysis, the court "struggle[d] to identify a plausible governmental interest

8

No. 15-50168

that would be served by the no-surcharge law". *Id.* at 1249. It held that, although "[the law] purports to regulate commercial behavior, [it] has the sole effect of banning merchants from uttering the word *surcharge*", a violation of the First Amendment. *Id.* at 1251 (emphasis in original).

### 2.

#### a.

As discussed *infra*, violation of Texas' law can result in a penalty's being imposed in a civil action. Although none of the merchants at hand have been challenged in that manner for violating Texas' law, their claims are ripe for review. As in the actions before the second and eleventh circuits, the merchants in this action adequately expressed "they were presently chilled from implementing their preferred pricing scheme, and . . . had standing based on a credible fear [Texas' law] would be enforced against them". *Expressions*, 808 F.3d at 127; *see also Dana's R.R. Supply*, 807 F.3d at 1241.

#### b.

"States are accorded wide latitude in the regulation of their local economies under their police powers". *Howard v. City of Garland*, 917 F.2d 898, 901 (5th Cir. 1990) (alterations omitted) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (discrimination claim)); *see also Am. Real Estate Inst., Inc. v. Ala. Real Estate Comm'n*, 605 F.2d 931, 933 (5th Cir. 1979). "[A] state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose". *Nebbia v. People of N.Y.*, 291 U.S. 502, 537 (1934) (upholding law setting prices for milk); *see also Munn v. People of State of Ill.*, 94 U.S. (4 Otto) 113, 125 (1876) ("In their exercise [of these powers] it has been customary . . . in this country from its first colonization, to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, & c., and in so doing to fix

9

No. 15-50168

a maximum of charge to be made for services rendered, accommodations furnished, and articles sold.").

Toward that end, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech". *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011). In that regard, our court has held merchants may not "bootstrap themselves into the heightened scrutiny of the First Amendment simply by infusing the prohibited conduct with some element of speech". *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 506 (5th Cir. 2001) (prohibition of direct sale of automobiles from manufacturer to consumer did not implicate First Amendment).

Reviewing the parties' claims *de novo*, and in the light of the States' broad authority to regulate economic conduct, we hold Texas' law regulates conduct, not speech, and, therefore, does not implicate the First Amendment. Instead, the law ensures only that merchants do not impose an additional charge above the regular price for customers paying with credit cards. Again, it states: "In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment". Tex. Fin. Code § 339.001(a). Along that line, the second circuit's reasoning in upholding New York's anti-surcharge law is persuasive. *Expressions*, 808 F.3d at 127–35.

i.

The text of Texas' law provides the first indication that it regulates conduct, not speech. *See Dana's R.R. Supply*, 807 F.3d at 1242–43. The Texas, like the New York, law does not define "surcharge", nor does it address "discounts" or any other pricing schemes beyond imposing surcharges for credit-card transactions. Tex. Fin. Code § 339.001(a); N.Y. Gen. Bus. Law § 518. Therefore, we understand the statutory terms according to their ordinary meaning. *E.g., United States v. Transocean Deepwater Drilling, Inc.*,

10

No. 15-50168

767 F.3d 485, 490 (5th Cir. 2014).  Pursuant to a plain reading of the Texas law, it bans surcharges, and is otherwise completely silent regarding other forms of pricing.  Tex. Fin. Code  § 339.001(a).  Therefore, similar to New York's law, Texas' does not forbid merchants from charging cash customers a different price than that charged to credit-card customers.  *Expressions*, 808 F.3d at 130–31.

Instead, as the second circuit held in *Expressions* for New York's law, Texas' "forbids charging credit-card customers an additional amount *above* the regular price that is not also charged to cash customers, but it permits offering cash customers a discount *below* the regular price that is not also offered to credit-card customers".  *Id.* at 128 (emphasis in original).  In other words, a plain reading of the statute indicates that a "surcharge" is not the same as a "discount", contrary to the merchants' assertions.  While a merchant may have the same ultimate economic result if it applies the same amount in the form of a credit-card surcharge that it would otherwise apply as a cash discount, the law does not require that.

On the contrary, as the parties concede, Texas' law allows a merchant to discount and dual-price as it wishes; these amounts are not required to be the amount of the "swipe fees" the merchants maintain are at issue.  As the second circuit persuasively noted:

> [T]he central flaw in [the merchants'] argument [] is their bewildering persistence in equating the actual imposition of a credit-card surcharge (i.e., a seller's choice to charge an additional amount above the sticker price to its credit-card customers) with the words that speakers of English have chosen to describe that pricing scheme . . . . But Plaintiffs are simply wrong.  What [the New York law] regulates—all that it regulates—is the difference between a seller's sticker price and the ultimate price that it charges to credit-card customers. A seller imposing a surcharge

11

No. 15-50168

> (*an additional amount above its sticker price*) on credit-card customers could choose to "characterize" that additional charge as whatever it wants, but that would not change the fact that it would be violating [the New York law].

*Expressions*, 808 F.3d at 131–32 (emphasis added).

This understanding of the anti-surcharge law fits neatly within the lapsed federal version of the law, from which the state anti-surcharge laws arose, and the federal statutory definition of surcharge: "an additional amount above the seller's regular price". *See id.* at 132; 15 U.S.C. § 1602(r); Pub. L. No. 94-222, 90 Stat. 197 (1976). Precisely what the merchants maintain they are prevented from "characterizing" is what is prohibited economic conduct under the law: imposing surcharges.

"Fifth Circuit law is crystal clear that when, as here, the language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (quoting *Guilzon v. Comm'r of Internal Revenue*, 985 F.2d 819, 823 n.11 (5th Cir. 1993)). On the other hand, the legislative history of the Texas law, discussed *supra*, illuminates the law's simply forbidding merchants' imposing credit-card surcharges. The bill's sponsor noted the law was intended to ban surcharges, or "an added cost over and above the regularly marked price on goods and services". *Hearings on Tex. H.B. 1558 Before the House Comm. on Fin. Insts.*, 69th Leg. R.S. (22 Apr. 1985). Furthermore, he stated that, "until the federal government places a permanent ban on [credit-card surcharges], I believe it is in our best interest to protect the consumer". *Id.* His statements reflect the Texas legislators' intent in enacting the law: to prohibit additional costs above the "normal" price, in the interest of the consumer. If the Texas legislature had wished to also ban discounts, it could have done so.

No. 15-50168

In sum, the merchants' assertion Texas' law regulates what they say, rather than what they do, is unavailing. *See Rumsfeld*, 547 U.S. at 60 (holding a law requiring schools to "afford equal access to military recruiters" regulates "conduct, not speech. It affects what law schools must *do* . . . not what they may or may not *say*." (emphasis in original)).

ii.

Consequently, Texas' law concerns pricing regulation; and, again, as the second circuit noted: "[P]rices, although necessarily communicated through language, do not rank as 'speech' within the meaning of the First Amendment". *Expressions*, 808 F.3d at 130. The court continued: "This principle is illustrated most vividly by the fact that price-control laws, which necessarily prevent sellers from communicating certain (illegal) prices, have never been thought to implicate the First Amendment". *Id.* A State's authority to regulate the "prices to be charged for the products or commodities [a business] sells", *Nebbia*, 291 U.S. at 537, does not implicate the First Amendment. *Expressions*, 808 F.3d at 130–31 (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 504–08 (1996) (plurality opinion); *accord id.* at 524 (Thomas, J., concurring in part and concurring in the judgment); *id.* at 530 (O'Connor, J., concurring in the judgment); *Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71, 77 (1st Cir. 2013) (holding prohibition on discounts for tobacco products by coupons and multi-packs regulated economic conduct)). The States' power extends beyond price ceilings and floors to having the authority to set "regular" versus "excessive" or "unreasonable" price restrictions. *See, e.g.*, *O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*, 282 U.S. 251, 257–58 (1931) (upholding prohibition of "unreasonable" insurance commissions).

And, "[i]f prohibiting certain prices does not implicate the First Amendment, it follows that prohibiting certain relationships between prices also does not implicate" it. *Expressions*, 808 F.3d at 131. Based on the plain

13

No. 15-50168

language of Texas' law, simply imposing credit-card surcharges is prohibited; as the Commissioner points out, the merchants are not prevented from "informing customers about the cost of credit, encouraging them to use cash, or expressing views on pricing policy more generally". *See Rumsfeld*, 547 U.S. at 62.

Furthermore, simply speaking about the prices regulated by Texas' law does not transform it into a content-based speech restriction; the speech is merely incidental to the regulated economic conduct. *See Ford Motor*, 264 F.3d at 506. In *Roark & Hardee LP v. City of Austin*, for example, our court held the regulation requiring restaurant owners to verbally request that smokers extinguish their cigarettes or leave the premises did not implicate the First Amendment. 522 F.3d 533, 549–50 (5th Cir. 2008). The owners' speech was incidental to the no-smoking law, and was not protected commercial speech. *Id.* at 550. Similarly, any speech regarding surcharges or discounts is incidental to Texas' ban on imposing credit-card surcharges.

Unlike in *Expressions*, the merchants in this action do not claim Texas' law forbids a dual-pricing scheme. Therefore, we have no reason, as the second circuit did, to abstain under *Pullman*. 312 U.S. 496; *see also, e.g.*, *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm. of State Bar of Tex.*, 283 F.3d 650, 653 (5th Cir. 2002) ("[T]here must be an uncertain issue of state law that is 'fairly susceptible' to an interpretation that would render it unnecessary for us to decide the federal constitutional questions in a case.").

Indeed, the second circuit's decision to abstain pursuant to *Pullman* arose under circumstances distinguishable from those at issue here. In *Expressions*, as discussed *supra*, the court first held the New York anti-surcharge law did not implicate the First Amendment in the context of applying either a discount or a surcharge to "single-sticker-price schemes". 808 F.3d at 135. It then questioned whether the law could be applied in the dual-

No. 15-50168

pricing context, when the law did not address any other pricing scheme but the ban on credit-card surcharges. *Id.* at 135–38. The merchants in that action maintained the law prevented them from engaging in any kind of dual pricing. *Id.* at 135. Here, on the other hand, the parties concede dual pricing is allowed; the merchants simply object to their inability to characterize price differentials as a "surcharge", juxtaposed with a "discount".

Moreover, the eleventh circuit's holding the Florida anti-surcharge law regulated speech and not conduct, thereby implicating the First Amendment, is unavailing for Texas' law. As stated *supra*, that court characterized a surcharge as a "negative discount", and stated there was "no real-world difference" between the two. *Dana's R.R. Supply*, 807 F.3d at 1245. (The Florida law expressly excluded "discounts" from the restriction, while New York's and Texas' laws are silent regarding pricing schemes other than applying surcharges. *Compare* Fla. Stat. § 501.0117(1)–(2) *with* N.Y. Gen. Bus. Law § 518 *and* Tex. Fin. Code § 339.001(a).) Additionally, it compared the pricing regulation to a law banning "half-empty" beverages, while allowing those that are "half-full". 807 F.3d at 1245 (emphasis omitted). The eleventh circuit's distinguishing between a "surcharge" and a "discount" overlooks differences in the economic activity, and that the anti-surcharge law solely bans application of additional fees above the normal price and nothing more. Therefore, the end result of a discount does not always equal a surcharge.

B.

"A statute is unconstitutionally vague if it does not give a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (quoting *United States v. Bird*, 124 F.3d 667, 683 (5th Cir. 1997) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). For obvious reasons, a civil law "is subject to a less strict vagueness test" than a criminal law. *Vill. of*

15

No. 15-50168

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982); *Groome*, 234 F.3d at 217.

Under Texas administrative law, the Commissioner may seek civil penalties against a merchant who violates Texas' anti-surcharge law. *See* 7 Tex. Admin. Code § 4.104 (discussing service of notice for civil action); Tex. Fin. Code § 339.001(c)–(d) (giving the Finance Commission of Texas exclusive authority to enforce and adopt rules relating to § 339.001). As the merchants concede, in civil actions, a law is void for vagueness only if its "terms [are] so vague and indefinite as really to be no rule or standard at all or [are] substantially incomprehensible". *Ford Motor*, 264 F.3d at 507–08 (alterations, citations, and internal quotations marks omitted).

Largely for the reasons discussed *supra*, Texas' law is not unconstitutionally vague. The law has a "core meaning that can reasonably be understood". *Expressions*, 808 F.3d at 142. And, as stated, words are given their ordinary meaning unless defined otherwise in the statute. *Hamilton*, 310 F.3d at 391–92. A plain reading of Texas' law shows it forbids a merchant from imposing an extra charge for a purchase with a credit card, and is completely silent as to any other form of pricing. Tex. Fin. Code § 339.001(a).

Moreover, "a federal court must construe a state statute to avoid a constitutional problem if the statute is 'susceptible of such a construction'". *Dana's R.R. Supply*, 807 F.3d at 1253 (Carnes, C.J., dissenting) (alterations omitted) (quoting *S. Utah Mines & Smelters v. Beaver Cty.*, 262 U.S. 325, 331 (1923)). Here, even if there is any vagueness in the Texas statute, it can be construed to eliminate that vagueness. *Expressions*, 808 F.3d at 144 (citing *Skilling v. United States*, 561 U.S. 358, 403–04 (2010) and *United States v. Lanier*, 520 U.S. 259, 266 (1997)). By reading the statute to mean what it states, merchants cannot charge an extra fee in transactions paid with a credit card; therefore, the largely hypothetical scenarios in which the merchants

16

No. 15-50168

complain of vagueness are eliminated. Moreover, as stated *supra* and as the parties concede, the law does not prohibit merchants from advertising two prices.

### III.

For the foregoing reasons, the judgment is AFFIRMED.

No. 15-50168

JAMES L. DENNIS, Circuit Judge, dissenting.

Five Texas merchants, the plaintiffs in this case, allege that they wish to post two prices for the goods and services that they offer: one price that will apply if the customer pays in cash, another that will apply if the customer pays by credit card. They wish to tell their customers that the difference between these two prices is a "surcharge" for using a credit card, rather than a "discount" for using cash. The merchants claim that they have not instituted such a pricing practice because they fear that they will be held liable under the Texas Anti-Surcharge Law, not for charging less for cash purchases than for credit, but rather for describing the difference between the two prices as a "surcharge" instead of as a "discount."[1] They complain that this restriction on their characterization of the price difference is an unconstitutional violation of their First Amendment rights.

As the majority explains, a surcharge is "an additional amount above the seller's regular price." Op. at 15. The State asserts that "Texas's Anti-Surcharge Law regulates a pricing practice—*i.e.*, surcharging credit-card customers—not information about a lawful transaction." And in affirming the district court's dismissal of the plaintiffs' First Amendment claims, the panel majority characterizes the Anti-Surcharge Law as an economic regulation because it "solely bans application of additional fees above the normal price and nothing more." *Id.* But the State concedes, and the panel majority recognizes, that "dual-pricing schemes" of the sort described by the merchants are allowed under the statute, and thus the merchants may legally post a

---

[1] As the majority opinion states, the Texas Anti-Surcharge Law, in pertinent part, provides: "In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment."

18

No. 15-50168

higher credit-card price and a lower cash price for the same item.  A merchant who describes the difference between these prices as a surcharge is not assessing "additional" fees above a "regular" price; he is only characterizing a perfectly legal price differential in a chosen way.  If he violates the Anti-Surcharge Law it is because of the content of his speech, not because of the nature of his conduct.

Perhaps inadvertently, the panel majority admits that the Anti-Surcharge Law does not only regulate economic conduct but, when applied to dual-pricing schemes, prohibits the use of words to convey a particular message.  Distinguishing this case from *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 137 (2d Cir. 2015), where it was "far from clear" that New York's anti-surcharge law applied to dual-pricing schemes, the majority writes: "Here, on the other hand, the parties concede dual pricing is allowed; the merchants simply object to their inability to characterize price differentials as a 'surcharge', juxtaposed with a 'discount'," op. at 15.  The majority does not—and, I suggest, cannot—explain how a law that affects merchants' ability to characterize legal price differentials as "surcharges" rather than as "discounts" is not a content-based restriction on speech subject to First Amendment scrutiny.  *See, e.g.*, *Sorrell v. IMS Health Care, Inc.*, 131 S. Ct. 2653, 2665 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984)).

In fact, although the Second Circuit in *Expressions* declined to discuss the effect that Section 518, New York's anti-surcharge law, might have on dual pricing schemes, the court's opinion illuminates the critical distinction—elided by the panel majority—between the regulation of pricing and the regulation of

19

No. 15-50168

the speech used to describe it.  The court determined that Section 518 does not
violate the First Amendment as applied to single-sticker-price schemes, where
merchants "post only a single price for their goods and services and charge
more than that price to credit-card purchasers."  808 F.3d at 128.  The court
emphasized that "Section 518 does not prohibit all differentials between the
price ultimately charged to cash customers and the price ultimately charged to
credit-card customers," *id*., and that "[b]y its terms, Section 518 does not
prohibit sellers from referring to credit-cash price differentials as credit-card
surcharges, or from engaging in advocacy related to credit-card surcharges,"
*id*. at 131.  Instead, the court explained:

> What Section 518 regulates—all that it regulates—is the
> difference between a seller's sticker price and the ultimate price
> that it charges to credit-card customers. A seller imposing a
> surcharge (an additional amount above its sticker price) on credit-
> card customers could choose to "characterize" that additional
> charge as whatever it wants, but that would not change the fact
> that it would be violating Section 518. Conversely, *a seller offering*
> *a discount (a reduction from its sticker price) to cash customers*
> *could choose to "characterize" that reduction as whatever it wants*
> *(including as a "credit-card surcharge"), but that would not change*
> *the fact that the seller would not be violating Section 518.*

*Id*. at 132 (emphasis added).  In other words, part of what made the New
York law a purely economic regulation was the fact that, although it restricted
merchants' ability to set their prices as they wished, it did not restrict their
ability to *describe* their prices or discuss the reasoning underlying the prices.
If the credit card fee increased the price of a $100 item by $2, the merchant
had to include that $2 in the single sticker price in order to pass the cost to the

20

No. 15-50168

customer—but he could tell the customer that she could avoid the $2 "credit card surcharge" by paying in cash.

As applied to dual-pricing schemes, the Texas law does not regulate the difference between prices; the State admits that the law permits merchants to post a cash price and a higher credit price for the same item. All that it regulates is what merchants can tell customers about their prices. I cannot see how such a restriction can avoid First Amendment scrutiny. Nor can I see how such a restriction can survive it. Under *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980), the State must present evidence to establish that the statute "directly advances" a "substantial" government interest and "is not more extensive than is necessary to serve that interest."[2] *See also Sorrell*, 131 S. Ct. at 2667-68. The State has asserted that "the law effectively sets the maximum price for credit-card purchases as the posted price, while also restricting merchants' ability to obtain windfall profits and limiting consumer confusion." But if Texas truly wanted to "set[] the maximum price for credit-card purchases" and "restrict merchants' ability to obtain windfall profits," it could pass a law tying credit-card surcharges to swipe fees. Such a law would also standardize surcharges, eliminating the risk of consumer confusion and allowing consumers to effectively compare prices. Instead, the State has prohibited merchants from *justifying* their maximum prices to their customers by preventing them from

---

[2] The first prong of *Central Hudson* functions to permit regulation of speech that is either misleading or related to unlawful activity. Here, the State cannot claim that the speech at issue is misleading; the merchants simply want to truthfully explain the effect of credit card processing fees. And the State cannot argue that the speech relates to unlawful activity without employing the most flagrant tautological reasoning: the speech only "relates to unlawful activity" in the sense that, under the statute, the speech itself renders the conduct unlawful.

21

No. 15-50168

characterizing the differential between cash and credit prices as a surcharge. Even if the State can show that its interest in enacting the law is substantial and that the law directly advances that interest, the restriction therefore falters on the final *Central Hudson* prong. *See* 447 U.S. at 565 ("The regulatory technique may extend only as far as the interest it serves.").

By permitting merchants from describing the difference between cash and credit prices as a "discount" while prohibiting them from describing it as a "surcharge," the Texas Anti-Surcharge Law makes the legality of a price differential turn on the language used to describe it. This is not a regulation of pricing or of other economic activity, but regulation of protected commercial speech, and one that I believe cannot survive First Amendment scrutiny. For these reasons, contrary to the majority, I conclude that the defendants' motion to dismiss should have been denied, that the enforcement of the Texas Anti-Surcharge Law should have been preliminarily enjoined, and that the case should be remanded for further proceedings. Accordingly, I respectfully dissent.

# BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* Fed. R. App. P. & 5th Cir. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

_____ v. _____ No. _____

The Clerk is requested to tax the following costs against: _____

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($500.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | Total $ _____ | | | | Costs are taxed in the amount of $ _____ | | | |

Costs are hereby taxed in the amount of $ _____ this _____ day of _____, _____.

LYLE W. CAYCE, CLERK

State of
County of _____     By _____

**Deputy Clerk**

I _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This _____ day of _____, _____.

_____
**(Signature)**

**\*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS**

Attorney for _____

*FIFTH CIRCUIT RULE 39*

**39.1 Taxable Rates.** *The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5TH CIR. R. 32.2.3 that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available; and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

**39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs.** *Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

**39.3 Time for Filing Bills of Costs.** *The clerk must receive bills of costs and any objections within the times set forth in FED. R. APP. P. 39(D). See 5TH CIR. R. 26.1.*

FED. R. APP. P. 39.    COSTS

**(a) *Against Whom Assessed.*** The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

**(b) *Costs For and Against the United States.*** Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

**©) *Costs of Copies*** Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

**(d) *Bill of costs: Objections; Insertion in Mandate.***

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

**(e) *Costs of Appeal Taxable in the District Court.*** The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

March 02, 2016

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding:  Fifth Circuit Statement on Petitions for Rehearing
            or Rehearing En Banc

    No. 15-50168    Lynn Rowell, et al v. Leslie Pettijohn
                    USDC No. 1:14-CV-190

    ----------------------------------------------------

Enclosed is a copy of the court's decision.  The court has entered
judgment under FED R. APP. P. 36.  (However, the opinion may yet
contain typographical or printing errors which are subject to
correction.)

FED R. APP. P. 39 through 41, and 5TH CIR. R.s 35, 39, and 41 govern
costs, rehearings, and mandates.  **5TH CIR. R.s 35 and 40 require
you to attach to your petition for panel rehearing or rehearing en
banc an unmarked copy of the court's opinion or order.**  Please
read carefully the Internal Operating Procedures (IOP's) following
FED R. APP. P. 40 and 5TH CIR. R. 35 for a discussion of when a
rehearing may be appropriate, the legal standards applied and
sanctions which may be imposed if you make a nonmeritorious
petition for rehearing en banc.

Direct Criminal Appeals.  5TH CIR. R. 41 provides that a motion for
a stay of mandate under FED R. APP. P. 41 will not be granted simply
upon request.  The petition must set forth good cause for a stay
or clearly demonstrate that a substantial question will be
presented to the Supreme Court.  Otherwise, this court may deny
the motion and issue the mandate immediately.

Pro Se Cases.  If you were unsuccessful in the district court
and/or on appeal, and are considering filing a petition for
certiorari in the United States Supreme Court, you do not need to
file a motion for stay of mandate under FED R. APP. P. 41.  The
issuance of the mandate does not affect the time, or your right,
to file with the Supreme Court.

The judgment entered provides that plaintiffs-appellants pay to
defendant-appellee the costs on appeal.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Jamei R. Schaeffer, Deputy Clerk

Enclosure(s)

Mr. James T. Almon
Mr. Richard Alan Arnold
Mr. William Jay Blechman
Ms. Maria Amelia Calaf
Mr. Richard Lyle Coffman
Mr. Samuel B. Gedge
Mr. Evan Scott Greene
Mr. Deepak Gupta
Mr. Jonathan Jared Ihrig
Ms. H. Melissa Mather
Mr. Paul M. Sherman
Mr. Daniel Adam Small